In re ) Case No. _____ **09-40921** _____
)
**Blue Heron Paper Company** ) NOTICE OF ***PRELIMINARY***
) HEARING ON MOTION
) ☒ FOR USE OF CASH COLLATERAL
) ☐ TO OBTAIN CREDIT
Debtor(s) ) *(Check One)*

YOU ARE NOTIFIED THAT:

1.   The undersigned moving party, **Blue Heron Paper Company** _____, filed a Motion ☒ For Use of Cash Collateral ☐ To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

   a.   The immediate and irreparable harm that will come to the estate pending a final hearing is _____.

   b.   The amount of ☒ cash collateral ☐ credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.   The name and service address of the moving party's attorney (or moving party, if no attorney) are: **Brandy A. Sargent, Stoel Rives LLP, 900 SW Fifth Ave, #2600, Portland, OR 97204** _____.

3.   A ***PRELIMINARY*** HEARING on the motion WILL BE HELD ON ___ **01/04/09** ___ AT ___ **2:00 p.m.** ___ IN **Courtroom # 3   1001 Southwest Fifth Avenue,  Suite 700 Portland, OR 97204** _____.
Testimony will be received if offered and admissible.

4.   If you WISH TO OBJECT to the motion, YOU MUST DO ONE OR BOTH OF THE FOLLOWING: (1) ATTEND the preliminary hearing; AND/OR (2) FILE with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (a) a written response, which states the facts upon which you will rely, AND (b) a certificate showing a COPY of the response was given DIRECTLY TO the Judge, and served on the U.S. Trustee and the party named in pt. 2 above. See Local Form #541.51 for details.

5.   On  **12/31/09**  copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:

**/s/ Brandy A. Sargent** _____
Signature
**419 Main Street, Oregon City, OR 97045, 93-1293801** _____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (2/13/09)     **\*\*LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER\*\***

Brandy A. Sargent, OSB No. 045713
David B. Levant, *pro hac vice application pending*
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
basargent@stoel.com
dblevant@stoel.com

PROPOSED ATTORNEYS FOR DEBTOR

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. |
| BLUE HERON PAPER COMPANY, | Chapter 11 |
| Debtor. | DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH; AND (III) SCHEDULING A FINAL HEARING |
| | (Expedited Hearing Requested) |

Blue Heron Paper Company, debtor and debtor-in-possession in the above-captioned case

("**Blue Heron**" or the "**Debtor**"), hereby moves (the "**Motion**") for (i) interim and final orders

authorizing the nonconsensual use of cash collateral pursuant to Section 363(c)(2)(B) of Title 11

of the United States Code (the "**Bankruptcy Code**"), (ii) the granting of adequate protection

pursuant to Section 361 of the Bankruptcy Code, and (iii) a final hearing pursuant to Rule 4001

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Debtor requires

the use of cash collateral in order to reorganize or, failing reorganization, implement an orderly

Page 1 - DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

liquidation process and avoid a fire sale of its assets to the severe detriment of its unsecured creditors and equity holders. In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper under 28 U.S.C. § 1408.

## INTRODUCTION

2.     Blue Heron commenced this bankruptcy case on the date of this Motion (the "***Petition Date***") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this case. The Debtor is operating its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in detail in the Declaration of Michael A. Siebers in Support of First Day Relief (the "***Siebers Declaration***") filed contemporaneously herewith and incorporated herein by reference. In summary, the Debtor commenced this case because of an impending liquidity crisis precipitated by historic declines in newsprint consumption and pricing, short-term weakness in demand for Blue Heron's specialty "re-Brite" paper, and high costs for certain raw materials (old magazines and kraft pulp). Blue Heron also is facing an increase in delivered electricity cost of about $500,000 per month (based on current usage), beginning in January 2010, due to the expiration of a 3-year "opt out" arrangement it had with Portland General Electric.

4.     Considering these circumstances, Blue Heron determined that to remain viable it must mitigate the impact of the electricity price increase by using less power; downsize production and high-grade its customer mix by eliminating about 3,000 tons/month of its lowest margin newsprint business; and re-focus its future growth on sales of toweling and other

Page 2    -    DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
               (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
               ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

specialty paper products.  By taking these actions, Blue Heron expects to return to profitability in Spring 2010 and continue on a solid financial footing, even with the electricity cost increase.

5.      When sales volume is reduced, however, accounts receivable and inventories decline, reducing availability (and forcing repayment) under Blue Heron's revolving line of credit, while still requiring cash to repay accounts payable at legacy levels.  Given its current debt and liquidity situation, the Debtor does not have enough availability left on its credit line to conduct its product mix rationalization while meeting its payment obligations without over-drafting.  Accordingly, Blue Heron concluded that it must commence this case in order to obtain the continued use of its outstanding revolving credit and obtain a short breathing spell from creditors.

6.      Assuming that Blue Heron obtains the use of cash collateral and sufficient postpetition trade credit to continue operating, it hopes to maximize payments to its creditors, preserve more than 155 family-wage jobs in Oregon City, continue to provide retirement benefits to its former workers, and protect the equity of its employee-owners.

7.      While Blue Heron is optimistic that it can reorganize, it also is prepared if necessary to use its bankruptcy case to effect an orderly liquidation of its assets.  The Debtor believes that an orderly liquidation process under the Court's supervision will net many millions of dollars for the benefit of its unsecured creditors that would be lost in a forced sale of its assets.

8.      The Debtor requires the use of cash collateral pursuant to Section 363(c)(2)(B) of the Bankruptcy Code in both scenarios:  for continued operation in an effort to reorganize, and in order to implement an orderly liquidation process if reorganization is not possible.  All of Blue Heron's cash on the Petition Date constitutes cash collateral, so the Debtor can neither continue to operate nor liquidate its business in an orderly manner without the use of cash collateral.

9.      Blue Heron believes that the use of cash collateral will not harm its primary lender, Wells Fargo Bank, National Association ("**Wells Fargo**" or the "**Bank**"), because (i) the Bank is protected by a generous equity cushion and (ii) if for any reason Blue Heron cannot

Seattle-3584573.7 0010534-00013

reorganize, its use of cash collateral will result in a large net increase in the liquidation value of the Bank's other collateral. The Debtor proposes to provide further adequate protection to the Bank in the form of a replacement lien on postpetition inventory and accounts. The Debtor believes that the Bank is the only party with an interest in the estate's cash.

## BLUE HERON'S SECURED DEBT STRUCTURE

**A.      Wells Fargo Credit Facility**

10.      As of the Petition Date, Blue Heron owes Wells Fargo $14,542,485 pursuant to the terms of that certain Credit and Security Agreement dated as of December 30, 2003, as amended through the Eleventh Amendment to Credit and Security Agreement dated June 23, 2009 (as so amended, the "***Wells Fargo Credit Facility***").[1] Blue Heron's debt to the Bank on the Petition Date consists of $12,217,485 of revolving credit advances (the "***Revolving Advances***") and $2,325,000 of unamortized principal under a machinery and equipment note (the "***M&E Loan***" or the "***Term Loan***" and, together with the Revolving Advances, the "***Wells Fargo Debt***").[2]

11.      The Wells Fargo Credit Facility is secured by (i) a first priority security interest in substantially all of Blue Heron's personal property (including among other things its accounts receivable, inventory and equipment), *other than* the Energy Trust Equipment and the Energy Trust environmental credits assigned to the Climate Trust (as they are defined in the Siebers

---

[1] The amendments to the Wells Fargo Credit Facility include that certain First Amendment to Credit and Security Agreement dated June 29, 2004, Second Amendment to Credit and Security Agreement dated October 29, 2004, Third Amendment to Credit and Security Agreement dated March 21, 2005, Fourth Amendment to Credit and Security Agreement dated July 11, 2005, Fifth Amendment to Credit and Security Agreement dated March 10, 2006, Sixth Amendment to Credit and Security Agreement dated September 13, 2006, Seventh Amendment to Credit and Security Agreement dated June 25, 2007, Eighth Amendment to Credit and Security Agreement dated July 6, 2007, Ninth Amendment to Credit and Security Agreement, dated November 8, 2007, Tenth Amendment to Credit and Security Agreement, dated March 23, 2009, and Eleventh Amendment to Credit and Security Agreement dated June 23, 2009.

[2] Blue Heron also owes the Bank a small amount of interest that has accrued on the Term Loan since November 30, 2009.

Page 4      -      DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7      Doc 16      Filed 12/31/09

Declaration), and (ii) and a first priority lien on the Debtor's Oregon City paper mill property (the "**Mill Property**") ((i) and (ii), collectively, the "**Collateral**").

12. Wells Fargo makes Revolving Advances available to Blue Heron in accordance with a "borrowing base" formula that includes (i) 85% of "eligible accounts"; *plus* (ii) the lesser of (A) $1,500,000 or (B) 50% of "eligible inventory"; *minus* (iii) a requirement that Blue Heron maintain minimum availability of $900,000 (often referred to as a "block"); (iv) *subject to* a maximum revolving credit amount of $20,500,000. Eligible accounts consist of accounts receivable arising from the sale of the Debtor's paper products, after excluding fifteen different types of accounts that Wells Fargo is unwilling to lend against; eligible inventory includes Blue Heron's finished goods inventory and wood chips inventory, valued at the lower of cost or market, after excluding a baker's dozen different types of inventory that Wells Fargo is unwilling to lend against. Blue Heron submits a "daily collateral report" showing the current amount of its borrowing base to Wells Fargo at least once each week and on each day that the Debtor seeks a Revolving Advance.

13. Revolving Advances are automatically repaid through collections by Wells Fargo pursuant to that certain Lockbox and Collection Account Agreement between Blue Heron and Wells Fargo dated as of December 30, 2003 (the "**Lockbox Agreement**"). Among other things, the Lockbox Agreement requires the deposit of all accounts receivable and all other cash proceeds of Collateral be deposited directly to a lockbox account at Wells Fargo (Account No. 4030001515) (the "**Lockbox Account**"). Those collections are automatically swept by the Bank each day and applied to the outstanding balance of the Wells Fargo Credit Facility.

14. The M&E Loan was made in July 2007 pursuant to the Eighth Amendment to Credit and Security Agreement dated July 6, 2007 in the original amount of $4,500,000 and has been paid-down by more than 48% through $75,000 monthly amortizations of principal. In connection with the M&E Loan, the Bank obtained an appraisal of Blue Heron's machinery and equipment Collateral from James G. Murphy Inc. (the "**Murphy Appraisal**"). The Murphy

Page 5 - DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

Appraisal concluded that, as of April 2007, Blue Heron's machinery and equipment Collateral was worth $8,050,000 at auction/forced liquidation and was worth $11,225,000 in an orderly liquidation. The Murphy Appraisal did not include a going concern or fair market valuation of the Debtor's machinery and equipment.

15.     Blue Heron is not in default under the Wells Fargo Credit Facility on the Petition Date.

**B.     Sempra Notes & Deed of Trust**

16.     In July 2008, in order to secure its substantial obligations to Sempra Energy Solutions LLC ("*Sempra*") relating to the purchase of electricity and gas, Blue Heron granted Sempra a first priority Deed of Trust, Assignment of Rents and Leases, Fixture Filing and Security Agreement dated as of April 30, 2009 (the "*Sempra Deed of Trust*") on the Debtor's Lagoon Property (as defined below). The Sempra Deed of Trust secures Blue Heron's energy purchases from Sempra *and* the Debtor's obligations under two promissory notes payable to Sempra: a first note dated July 31, 2008 in the original principal amount of $3,308,985.21, and a second note dated November 11, 2008 in the original principal amount of $1,778,291.04 (together, as the same have been modified prior to the Petition Date, the "*Sempra Notes*"). The Sempra Notes are amortized at the rate of $100,000 per month, and they are both due on March 31, 2010. The aggregate principal amount of the Sempra Notes on the Petition Date is $4,397,025.

17.     Wells Fargo does not have a lien on the Lagoon Property but is the beneficiary of a Standstill Agreement pursuant to which Sempra has agreed, among other things, to a 360-day "standstill period" following notice by Sempra to the Bank of certain events of default by Blue Heron. Blue Heron is not in default under the Sempra Notes or Sempra Deed of Trust on the Petition Date.

Seattle-3584573.7 0010534-00013

## C.  **ODOE & Energy Trust Debt**

18.  Finally, Blue Heron is indebted to the State of Oregon Department of Energy (the "***ODOE***") with respect to a construction and term loan of approximately $2,500,000 used to help finance the Debtor's "de-ink" plant expansion and modernization in 2005 (the "***De-Ink Project***").[3] The ODOE loan is due in 2012 and is currently paid at the rate of $41,256 per month with an interest rate of 5.85%. The principal amount of the ODOE loan on the Petition Date is $1,005,122. The ODOE loan is secured by a first priority lien on Blue Heron's Office Building (as defined below) and a second priority lien (behind the Energy Trust) on the equipment acquired by Blue Heron in connection with the De-Ink Project (the "***Energy Trust Equipment***").

## **EFFORTS TO OBTAIN OTHER FINANCING**

19.  In 2008 Blue Heron faced a liquidity crisis caused by a customer bankruptcy, high energy and raw material prices, and at the same time lackluster but improving prices for all the products the company produced. In response, beginning in March 2008, the Debtor began exploring alternative financing options using its own resources and later that month hired a financial advisor, Huron Consulting Group, to assist it in its efforts to obtain additional funding. In its search for financing Blue Heron solicited more 50  potential lenders, approximately 20 of which delivered confidentiality agreements to Blue Heron and received a detailed information book about the company, and at least 5 of which conducted at least some level of due diligence investigation.  The Debtor engaged in serious negotiations with three of those lenders, but ultimately none of the potential lenders was willing to commit to provide financing on terms acceptable to Blue Heron.

---

[3]  The de-ink process removes ink from waste paper pulp, allowing the pulp to be used for the manufacture of recycled paper products. The De-Ink Project was partially paid for by a $6,600,000 grant from the Energy Trust of Oregon, Inc. ("***Energy Trust***"). In connection with such grant, the carbon reduction credits relating to the De-Ink Project through 2012 were transferred to the Climate Trust of Oregon. The Debtor also had potential grant repayment obligations to Energy Trust that expired at the end of 2008.

Page 7    -    DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

20.     Blue Heron subsequently, on more than one occasion, also asked Wells Fargo to consider resetting its Term Loan against the Debtor's machinery and equipment and Mill Property.  Each such request was denied without substantial discussion.

21.     At this time Blue Heron perceives that (i) the credit markets are much worse than they were in March 2008, (ii) Blue Heron is a weaker credit and is no longer able to offer the Lagoon Property as security for a new loan, (iii) there is insufficient time to conduct a meaningful search for a new lender and close a debtor-in-possession financing, and (iv) the Bank will not extend significant additional credit to Blue Heron on an over-advance basis. Accordingly, Blue Heron believes that the use of Wells Fargo's cash collateral in bankruptcy is the only means by which the Debtor can continue to operate and, if necessary, finance an orderly liquidation process.

22.     In early December 2009 Blue Heron was approached by certain public agency representatives about a potential transaction concerning rights to develop the Mill Property in the event the Debtor ceases manufacturing operations.  No values or dollar amounts were discussed. The Debtor does not have sufficient time to explore this possible transaction as an alternative source of liquidity, in lieu of its bankruptcy filing or the use of Wells Fargo's cash collateral, but Blue Heron anticipates that this transaction could play a role in the Debtor's ultimate restructuring efforts.

## RELIEF REQUESTED

23.     By this Motion, the Debtor seeks entry of interim and final orders (i) authorizing the Debtor to use cash collateral as provided in the proposed Interim Cash Collateral Order, (ii) granting Wells Fargo adequate protection as described herein and as set forth in the proposed Interim Cash Collateral Order, (iii) approving the form of notice of the final hearing on the use of cash collateral, (iv) approving the adequacy of the proposed service thereof, and (v) scheduling the final hearing.

Page 8   -   DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
               (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
               ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

## PROPOSED USE OF CASH COLLATERAL

24.     The Debtor's reorganization or, if needed, orderly liquidation efforts require access to working capital and specifically, access to cash on hand and the cash proceeds received from collection of its accounts receivable (collectively, the "***Cash Collateral***").  Use of Cash Collateral is necessary to provide the Debtor with the liquidity to operate and, if its operations prove unsuccessful, to wind-down its business in an orderly fashion.

25.     In the continued operations/reorganization context, Blue Heron will use Cash Collateral for payment of its ordinary operating expenses, including principally the purchase of raw materials, electricity and gas and the payment of employee wages, benefits and taxes, as shown in detail in the budget annexed to the Siebers Declaration as **Exhibit A** (the "***Budget***").  In this context the Debtor projects substantial earnings and positive cash-flow in 2010 after reducing its production levels and migrating toward more profitable product lines.  The benefits of down-sizing will not be immediate, however, and the Debtor anticipates at least three months of losses and negative cash-flow before realizing the full benefits of reduced production and realignment of product mix.  During such period the Debtor anticipates a limited erosion of Wells Fargo's generous equity cushion.  Following Blue Heron's return to profitability, the amount of Cash Collateral required for operations is expected to decline, and the Debtor will restore at least a part of the Bank's equity cushion.

26.     In the event Blue Heron cannot obtain sufficient trade credit to continue its manufacturing operations, or if its projections prove substantially too optimistic, or if for any other reason it becomes apparent to the Debtor—or the Court determines for any reason—that Blue Heron should cease its normal operations, then Blue Heron will require the use of Cash Collateral to conduct an orderly liquidation of its assets.  Cash Collateral will be required, among other things, to take Blue Heron's equipment Collateral out of operation and maintain it pending sale; to clean and repair such equipment as appropriate to maximize its value; to prepare the Office Building for sale and remediate any environmental conditions on the Mill Property and

Page 9   -   DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

the Lagoon Property;[4] and to pay employees, taxes, utilities and other necessary costs of conducting an orderly sale process.

27. Absent immediate access to Cash Collateral for continued operations, Blue Heron would have no alternative to liquidation. If it were not permitted to use Cash Collateral to conduct an orderly liquidation process, then the Debtor would be compelled to rapidly liquidate assets at fire-sale prices. Any liquidation would jeopardize full payment of priority creditors, certainly preclude full payment of general unsecured creditors and leave no return for the Debtor's equity holders, most of whom are current and retired employees. A significant further loss of value would be likely if Blue Heron were denied the use of Cash Collateral needed to conduct a full and orderly liquidation process.

28. For the reasons set forth above, to meet its immediate cash requirements and facilitate a reorganization or an orderly liquidation, the Debtor requires the use of Cash Collateral. Because Wells Fargo's liens encumber the only cash available to Blue Heron at this time (*i.e.*, the cash proceeds of Blue Heron's accounts receivable and inventory, whether or not counted toward the borrowing base) and Wells Fargo has not consented,[5] the Debtor seeks permission to make non-consensual use of Cash Collateral pursuant to Section 363(c)(2)(B) of the Bankruptcy Code. As described above, the Debtor concluded in its sound business judgment, and after having investigated and solicited other sources of other financing, that seeking approval of the use of Cash Collateral under the terms set forth herein was the most reasonable solution under the circumstances and addressed the Debtor's reasonably foreseeable needs.

---

[4] Blue Heron believes there are no substantial environmental conditions on or relating to any of the Mill Property, the Lagoon Property or the Office Building.

[5] Blue Heron hopes that, following a review of the Budget, the terms of the proposed Interim Cash Collateral Order, and other relevant circumstances, Wells Fargo will consent to entry of a consensual Interim Cash Collateral Order.

Page 10 - DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING
Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

### A. Overview of the Cash Collateral Terms

29.     Blue Heron is seeking authority to use cash that constitutes Wells Fargo's Cash Collateral.  In order to do so, the Debtor must demonstrate that Wells Fargo is adequately protected against the anticipated short-term diminution in the amount of such Collateral as a result of its use.  The Debtor submits that its burden of proving adequate protection is satisfied here because, in addition to the substantial equity cushion enjoyed by Wells Fargo, the Debtor is also prepared to provide the following additional adequate protection:[6]

- Blue Heron will initially make monthly interest payments on the Wells Fargo Debt at the rate of 4.25% per annum;[7]

- Wells Fargo shall be granted replacement liens on the Debtor's postpetition accounts receivable and inventory; and

- Cash Collateral shall be used only in accordance with the Budget.

30.     The Debtor believes that the Cash Collateral terms are fair and reasonable under the circumstances and that authorizing Blue Heron to use Cash Collateral serves the best interests of the Debtor, its creditors and estate.

### B. Wells Fargo is Adequately Protected

31.     Prior to granting permission to use cash collateral, a Court must find either that the secured creditor consents to such use or is otherwise adequately protected.  11 U.S.C. § 363. *See also In re ProAlert, LLC*, 314 B.R. 436, 444 (B.A.P. 9th Cir. 2004); *In re Whittenmore, Jr.*, 37 B.R. 93, 94 (Bankr. D. Or. 1984).  Section 361 of the Bankruptcy Code provides that adequate protection can be provided by, among other things, the making of periodic cash payments, the granting of replacement liens, or the granting of such other relief as will provide

---

[6]  Ultimately Wells Fargo will only be entitled to receive adequate protection to the extent that it can demonstrate an actual diminution in the value of its interest in the Collateral.

[7]  This rate is based on the interest rate charged by the Bank from December 2003 until its election in July 2007 to raise the interest rate under the Wells Fargo Credit Facility by 375 basis points pursuant to the Eighth Amendment to the Credit Agreement.

Page 11  -     DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

the indubitable equivalent of the secured creditor's interest in the relevant property.  11 U.S.C. § 361.  Numerous courts have held that the existence of an "equity cushion" alone constitutes adequate protection.  *See e.g.*, *In re Patrician St. Joseph Partners Ltd. P'Ship.*, 169 B.R. 669, 677 (D. Ariz. 1994) (stating an "equity cushion standing alone can provide evidence of adequate protection for a secured claim").

32.     The term "equity cushion" generally refers to the excess in value of collateral over the amount of a creditor's secured claim.  *In re Mellor*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984) ("'Equity cushion' has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during [sic] time the automatic stay remains in effect.").  Fair market value is the appropriate method to use when determining the amount of an equity cushion.  *See In re Boulders on the River, Inc.*, 164 B.R. 99, 104 n.4 (B.A.P. 9th Cir. 1994) ("Value Cushion is calculated by taking the fair market value of the property less the outstanding debt divided by the fair market value."); *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (using fair market value to calculate equity cushion); *In re Helionetics, Inc.*, 70 B.R. 433, 440 (Bankr. C.D. Cal. 1987) (concluding "[W]here there is a successful Chapter 11 case in progress, going concern is more appropriate than liquidation value and better reflects the reality of the situation."); *In re Mellor*, 734 F.2d at 1399, 1401 (using present value to calculate equity cushion); *In re Oak Glen R-Vee*, 8 B.R. 213, 216-17 (Bankr. C.D. Cal. 1981) (finding sufficient equity cushion based on reasonable market value of property used to secure debt).

**i.      Value of the "Equity Cushion" Prior to the Final Hearing.**

33.     Courts look to fair market value when measuring a secured lender's "equity cushion."  In order to minimize any basis for argument that Wells Fargo is adequately protected during the period from the Petition Date until entry of the Final Order, however, Blue Heron submits that Wells Fargo will maintain a healthy equity cushion even valuing its Collateral at a discount from the orderly liquidation values set forth in the Bank's own appraisals.

Page 12  -      DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
                (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
                ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

34. Specifically, Wells Fargo's appraisals of the Collateral[8] include the following "as-is liquidation values":

- According to the April 17, 2008 appraisal by PGP Valuation Inc ("**PGP**") commissioned for Well Fargo, the Mill Property's as is liquidation value range was from $5.47 million to $6.21 million (resulting in a midpoint value of $5.84 million); and

- According to the November 2007 Murphy Appraisal for the Bank of its equipment Collateral (excluding office equipment and business machines), the as is orderly liquidation value of Blue Heron's equipment was $11.225 million

Blue Heron estimates that the orderly liquidation value of the Energy Trust Equipment pledged to ODOE was approximately $500,000 as of the November 2007 Murphy Appraisal, resulting in an estimated orderly liquidation value of the equipment on which Wells Fargo holds a first lien to be $10,725,000.

35. In recognition of the change in market values since the dates of the Appraisals, Blue Heron has requested updates of the Appraisals by PGP and Murphy. While written update reports are not available at this time, preliminary reports indicate that the orderly liquidation values of the Mill Property and equipment Collateral are now as follows:

- According to a recent preliminary indication provided by PGP pending completion of a written report, the Mill Property's orderly liquidation value range is now from $5.26 million to $6.16 million (resulting in a midpoint value of $5.71 million); and

- According to a recent oral update of the Murphy Appraisal, the Bank's equipment Collateral (excluding and the Debtor's office equipment and business machines), now has an as is orderly liquidation value of approximately $8.70 million.

Blue Heron estimates that the orderly liquidation value of the Energy Trust Equipment represents approximately $388,000 of the latter amount, for an estimated orderly liquidation value of the Bank's equipment Collateral at this time of $8.31 million.

---

[8] The summaries of Wells Fargo's appraisals of the Mill Property and the Murphy Appraisal of Blue Heron's machinery and equipment are attached to the Siebers Declaration as **Exhibits B** and **C** (together, the "*Appraisals*"). Wells Fargo already has complete copies of the Appraisals.

Page 13  -  DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

36.     Assuming that in a liquidation Blue Heron can recover only:  (i) 85% of its eligible accounts (approximately $12.20 million) and 50% of its eligible inventory ($0.93 million), without regard to its other accounts and inventory or the "block" deducted by the Bank from the borrowing base; (ii) the midpoint orderly liquidation value for the Mill Property ($5.71 million); and (iii) the orderly liquidation value of Blue Heron's equipment ($8.31 million), the Bank will have at least $27.15 million of first lien Collateral value securing the Wells Fargo Debt of $14,542,485.  ***These figures indicate an equity cushion of more than $12.60 million, or more than 86% of the Wells Fargo Debt on the Petition Date.***  The Debtor acknowledges that Wells Fargo's equity cushion is likely to erode somewhat during the initial months following the Petition Date, but Blue Heron respectfully submits that, given the size of Well Fargo's remaining equity cushion and the other adequate protection set forth above, Wells Fargo is adequately protected on an interim basis even using liquidation values for the Bank's Collateral.

**ii.     The Fair Market Value of the Collateral.**

37.     Consistent with established precedent, for purposes of the Final Order Authorizing Use of Cash Collateral, Wells Fargo's equity cushion should be determined using the fair market value of the Collateral, adjusted as appropriate for current market conditions. *See In re Helionetics, Inc*., 70 B.R. at 439-40.  In this context Blue Heron believes that the fair market value of the Collateral is more than double the amount of the Wells Fargo Debt.  The Debtor will present further evidence in support of its valuation of the Bank's Collateral in connection with the Final Hearing, but in summary, this belief is based on (i) recovering approximately 95% of Blue Heron's "eligible" accounts receivable and a significant fraction of its other accounts, plus approximately 92% of the book value of its inventory; (ii) an updated fair market valuation of the Mill Property (if possible, taking into account recent public agency interest in the development of the property); and  (iii) a fair market valuation of Blue Heron's equipment, which has not previously been obtained.

Seattle-3584573.7 0010534-00013

38.     Such a sizeable equity cushion alone provides ample adequate protection to Wells Fargo.  *See In re Boulders on the River*, 164 B.R. at 104 (stating that "a 10% cushion satisfies the adequate protection standard").  *See also In re Mellor*, 734 F.2d at 1401 (equity cushion of 20% for debt secured by the debtor's residence was adequate protection for secured lender); *In re Helionetics, Inc.*, 70 B.R. at 440 (equity cushion of approximately $1 million, which represented over 20% of the debt secured by substantially all of debtor's assets, was adequate protection).[9]

39.     Even though the equity cushion is more than sufficient to protect Wells Fargo's interest in the Collateral, the Debtor has offered to provide Wells Fargo with additional forms of adequate protection.  Specifically, the Debtor is prepared to make monthly payments of interest at the contractual formula that applied during the first four years of the Wells Fargo Credit Facility (resulting in a rate of 4.25%, or approximately $51,505 of interest per month), *see* 11 U.S.C. § 361(1), and Cash Collateral will be used pursuant to the Budget annexed to the Siebers Declaration.

**C.     Use of Cash Collateral is Necessary**

40.     As set forth above in this Motion, Blue Heron requires use of the Bank's Cash Collateral both for continued operation in an effort to reorganize, and in order to implement an orderly liquidation process if reorganization is not possible.  All of Blue Heron's cash constitutes cash collateral, so Blue Heron can neither operate nor liquidate in an orderly manner without the use of such Cash Collateral.  Section 363(c)(2) of the Bankruptcy Code prohibits a debtor from using cash collateral without the consent of the secured party or court approval.  11 U.S.C.

---

[9]  The Court should find further support for the use of fair market value in determining that the Bank is adequate protected by reference to Blue Heron's success capturing fair market value when it liquidated the recycled newsprint mill in Pomona, California (the "***Pomona Mill***") and related assets owned by its subsidiary Blue Heron Paper Company of California, LLC ("***BHPCA***") in late 2007. Through an orderly liquidation process that spanned almost two years, Blue Heron recovered approximately $22.7 million from assets that the Bank valued at $15.4 million on an orderly liquidation basis.  The liquidation of the Pomona Mill demonstrated the Debtor's ability to conduct an orderly and effective liquidation of assets for fair market value.  Through the sale of the Pomona Mill and its related assets, the Debtor fully repaid a separate loan from Wells Fargo to BHPCA and paid all the Pomona Mill's trade creditors in full.

§ 363(c)(2). In the absence of consent, Section 363(c)(2)(B) permits the court, after notice and a hearing, to authorize the debtor to use cash collateral. *See In re ProAlert*, 314 B.R. at 441. The debtor is required to provide adequate protection in order for a court to authorize the use of cash collateral over a secured party's objection. *See id.* at 442 (stating that the court may authorize the use of cash collateral only if there exists adequate protection). *See also In re Patrician St. Joseph Partners*, 169 B.R. at 677; *In re Whittenmore*, 37 B.R. at 94.

41.     Blue Heron's need to use Wells Fargo's Cash Collateral is immediate. Granting such relief will minimize disruption of the Debtor's business and thereby further its efforts to reorganize. In the worst case, if Blue Heron cannot reorganize, the use of Cash Collateral will allow the Debtor to prepare its property for sale, will preserve the value of the Collateral, and is in the best interests of the Debtor, its creditors and the estate.

**REQUEST FOR IMMEDIATE USE OF CASH
COLLATERAL IS NECESSARY TO AVOID IRREPARABLE HARM**

42.     Pursuant to Bankruptcy Rule 4001(b)(2), a minimum of fifteen (15) days' notice is required before a final hearing on this Motion (the "***Final Hearing***") may commence. However, such Rule provides that the Court may conduct a hearing before such 15 day period expires, but may authorize the obtaining of credit and the use of only that amount of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Fed. R. Bank. P. 4001(c)(2).

43.     As stated above, it is essential to Blue Heron's reorganization efforts and to an orderly liquidation that the Debtor be authorized by this Court to use Cash Collateral on an interim basis as set forth herein pending the Final Hearing. Funds are urgently needed to meet the Debtor's immediate operating needs and, if necessary, to prepare its assets for an orderly liquidation. In the absence of immediate use of Cash Collateral, the Debtor's attempt to reorganize or to sell its assets in an orderly manner would be immediately and irreparably jeopardized.

Page 16  -    DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
              (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
              ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

44. The Debtor believes that the terms and conditions for its use of Wells Fargo's Cash Collateral represent the most favorable option for obtaining working capital and, for all of the foregoing reasons, are in the best interests of the Debtor and all of its creditors. Accordingly, the Debtor respectfully request that, pending the Final Hearing, the Debtor be permitted to use Cash Collateral, subject to the terms and conditions described herein and in the attached proposed Interim Order.

45. As is apparent from the foregoing, the interim relief requested in this Motion, pending a Final Hearing is necessary and appropriate and is essential to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## LBF 541.7 CERTIFICATION

46. The Debtor certifies that, except for the proposed monthly interest payments to Wells Fargo, this Motion does not contain any of the provisions on use of cash collateral which the Court usually will not approve, as set forth in Local Bankruptcy Form 541.7.

## NOTICE

47. Notice of the hearing on this Motion has been provided to: (a) counsel for Wells Fargo, (b) the Office of the United States Trustee, (c) each of the Debtor's twenty (20) largest unsecured creditors, and (d) the ESOP trustee for the Debtor's equity security holders. The Debtor submits that under the circumstances, no other or further notice is necessary.

48. The Debtor also proposes to serve a copy of the Interim Order and this Motion (together with exhibits) by hand delivery or overnight mail within three (3) days after entry of the Interim Order, upon (a) counsel for Wells Fargo, (b) the Office of the United States Trustee, (c) each Debtor's twenty (20) largest unsecured creditors, (d) the ESOP trustee for the Debtor's equity security holders, and (e) all parties that have filed notices of appearances and requests for notices in these cases. The Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the Interim Order, or the final order

Page 17  -  DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7   Doc 16   Filed 12/31/09

approving the collateral arrangements described here and all proceedings to be held in connection therewith, is required.

## NO PRIOR REQUEST

49.     No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, Blue Heron respectfully requests that the Court enter the order attached hereto as **Exhibit A** authorizing the use of cash collateral.

DATED:  December 31, 2009.

Stoel Rives LLP

/s/ Brandy A. Sargent
Brandy A. Sargent, OSB No. 045713
David B. Levant, *pro hac vice pending*
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480
basargent@stoel.com
dblevant@stoel.com

Proposed Attorneys for Debtor

Page 18  -   DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
              (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
              ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584573.7 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

# EXHIBIT A

Portlnd1-2195971.1 0000000-00001

Brandy A. Sargent, OSB No. 045713
David B. Levant, *pro hac vice application pending*
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
basargent@stoel.com
dblevant@stoel.com

PROPOSED ATTORNEYS FOR DEBTOR

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. |
| BLUE HERON PAPER COMPANY, | Chapter 11 |
| Debtor. | INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH; AND (III) SCHEDULING A FINAL HEARING |

This matter came on for hearing before the Court on the emergency motion (the "***Motion***") of the above-captioned debtor (the "***Debtor***") for interim and final orders (i) authorizing the nonconsensual use of cash collateral pursuant to Section 363(c)(2)(B) of Title 11 of the United States Code (the "***Bankruptcy Code***"), (ii) granting of adequate protection pursuant to Section 361 of the Bankruptcy Code, and (iii) scheduling a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

The Court, having reviewed the Motion, and based upon the statements of counsel for the Debtor and Wells Fargo Bank, National Association ("***Wells Fargo***" or the "***Bank***"), finds that:

Page 1   -   INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
            (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
            THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

## FINDINGS

1. On December 31, 2009 (the "***Petition Date***"), the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and managing its business as debtor-in-possession pursuant to Bankruptcy Code §1107 and §1108.

2. This Court has jurisdiction over this Chapter 11 case (the "***Case***") and the Motion pursuant to 28 U.S.C. §157(b) and §1334. The Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2). Venue of this Case and the Motion in this Court are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. As of the Petition Date, the Debtor is indebted to Wells Fargo in the approximate amount of $13.6 million pursuant to the terms of that certain Credit and Security Agreement dated as of December 30, 2003, as amended through the Eleventh Amendment to Credit and Security Agreement dated June 23, 2009 (as so amended, the "***Existing Loan Documents***"). Blue Heron's debt to the Bank consists of approximately $11.2 million of revolving credit advances (the "***Revolving Advances***") and exactly $2.325 million of unamortized principal under a machinery and equipment note (collectively, the "***Wells Fargo Debt***").

4. The Wells Fargo Debt is secured by (i) a first priority security interest in substantially all of Blue Heron's personal property (including its accounts receivable, inventory and equipment), *other than* the Energy Trust Equipment[1] and the Energy Trust Tax Credits, and (ii) and a first priority lien on the Mill Property ((i) and (ii), collectively, the "***Collateral***" and the security interests on the Collateral, collectively, the "***Pre-Petition Liens***").

5. The Debtor requires the use of the Collateral and the cash component and cash-equivalent proceeds of the Collateral (the "***Cash Collateral***") for the maintenance and preservation of the Debtor's property for the benefit of all creditors, for the operation of its business, and for payment of the expenses attendant thereto. Without the uninterrupted use of the Collateral and Cash Collateral, the Debtor will suffer immediate and irreparable harm.

---

[1] Capitalized terms defined in the Motion and not otherwise defined in this Order have the meanings given to them in the Motion.

Page 2 - INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
    (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
    THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7 Doc 16 Filed 12/31/09

6.      The Debtor is unable to obtain adequate unsecured credit for business operations allowable under § 503(b)(1) of the Code as an administrative expense.

7.      The Debtor does not intend to use, and has represented that it will not use, any of the funds allowed pursuant to this Order for any purpose not permitted by the Bankruptcy Code or by Court order.  The Debtor acknowledges and admits that the Cash Collateral constitutes "cash collateral" of the Bank within the meaning of section 363(a) of the Code.  Pursuant to sections 361 and 363(e) of the Code, the Bank is entitled to adequate protection of its interest in the Collateral in connection with the Debtor's use of the Cash Collateral.

8.      It is in the best interests of the Debtor and necessary for the preservation of the estate that the Debtor be authorized to use Cash Collateral in accordance with the terms and provisions of this Order.

9.      Pursuant to Code section 363(c) and Bankruptcy Rule 4001, notice of the hearing to approve this Order has been given by facsimile to the 20 largest unsecured creditors in this case, to the Office of the U.S. Trustee and the ESOP trustee for the Debtor's equity security holders.  No Creditors Committee has (yet) been appointed in the Chapter 11 case.  Under the circumstances of this case, such notice and such opportunity for hearing is appropriate and sufficient and complies with the Bankruptcy Rules.

10.      The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein for the use of cash collateral is necessary to avoid immediate and irreparable harm to the Debtor.  The Court concludes that entry of this Order is in the best interests of the Debtor's estate and its creditors, as implementation will provide the Debtor with the liquidity to operate and, if its operations prove unsuccessful, to wind-down its business in an orderly fashion.

## ORDER

NOW, THEREFORE, based on the foregoing Findings, and the Court being otherwise duly advised, it is hereby

Page 3    -    INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
              (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
              THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

ORDERED as follows:

1.     The Motion is granted on an interim basis, and the Debtor shall be and is hereby authorized to use Cash Collateral in accordance with the terms and provisions of this Order.

2.     The Debtor may use Cash Collateral for the purposes set forth in the Budget attached to this Order as Exhibit A (the "***Budget***").  The Debtor shall not exceed total budgeted expenses provide for in the Budget by more than ten percent (10%) during any weekly period covered by this Order without the Bank's prior approval or further order of this Court.  Approval of the line item expenses set forth in the Budget shall not be construed as authorization for the Debtor to accrue additional liabilities on credit.  The Debtor will report to the Bank, the U.S. Trustee and any official creditors committee that may be formed on Tuesday, January 12 and Tuesday January 19, 2010 regarding the status of all paid costs, expenses, receivable collections, revenues and overhead expenses for the immediately prior week (each week consisting of results for Monday through Sunday), including a cumulative (from the Petition Date) analysis of the Budget, the Debtor's compliance with the Budget, and any prospective revisions to the Budget.

3.     All funds, monies, cash and cash equivalents including, but not limited to, the Cash Collateral now or hereafter in the possession or control of the Debtor shall, promptly upon receipt of same by the Debtor, be deposited to the Debtor's Wells Fargo account no. 4030001523 (the "***Cash Collateral Account***") for disbursement to the Debtor by the Bank in accordance with the terms of this Order.  Without limiting the generality of the foregoing, the Debtor shall fully account for the Cash Collateral proceeds of the Bank's Collateral as contemplated by the terms of this Order, the Existing Loan Documents and the documents relating thereto.  All funds deposited in the Cash Collateral Account shall be presumed to be proceeds of the Collateral.

4.     The Bank may, but under no circumstances (either pursuant to this Order or the Existing Loan Documents) shall the Bank be obligated to, advance or make available to the Debtor credit or cash in excess of the Cash Collateral available.

5.     The Bank is authorized and directed to collect upon, convert to cash, and enforce checks, drafts, instruments, and other forms of payment now or hereafter coming into its possession

Page 4   -   INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
             (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
             THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

or under its control and deposit the proceeds of the same in the Cash Collateral Account without any further authorization or direction by the Debtor or the Court.

6.        As adequate protection and to secure the diminution in value of the Collateral and the Cash Collateral resulting from the Debtor's use of the Bank's Collateral and Cash Collateral, the Bank is hereby granted a postpetition security interest in and lien (the "***Adequate Protection Lien***") upon all of the Debtor's post-petition accounts receivable and inventory (the "***Postpetition Collateral***").

7.        The security interest and liens granted in the preceding paragraph 6 shall have a first priority position and shall be valid and enforceable as of the Petition Date and shall continue to be at all times first and senior to all other interests and liens of every kind and nature, whether created consensually, by an order of any court, including this Court, or otherwise, including without limitation liens or interests granted in favor of any other person or entity pursuant to section 363, section 364 or any other section of the Code, provided that the Adequate Protection Lien shall not prime and shall be subject and subordinate to any prior, valid, perfected and enforceable liens or security interests.  The granting of such security interest and liens shall be in addition to the Collateral, and nothing contained herein shall constitute a waiver of the Bank's rights and priority in the Collateral.

8.        The Adequate Protection Lien shall be and hereby is declared to be valid, perfected and enforceable as of the date of this Order, without the need for execution, recordation or filing of any further document or instrument or the taking of any further act otherwise required under applicable non-bankruptcy law.  To the extent necessary to permit the creation and perfection of the above-described liens and security interests, the automatic stay under section 362 of the Code is hereby modified and vacated.

9.        As further adequate protection and to mitigate any diminution in the value of the Collateral and the Cash Collateral resulting from the Debtor's use of the Bank's Cash Collateral, Blue Heron shall make monthly interest payments on the Wells Fargo Debt at the Wells Fargo "Prime" rate of interest plus 100 basis points (for a current interest rate of 4.25% per annum),

Page 5     -     INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
                    (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
                    THEREWITH; AND (III) SCHEDULING A FINAL HEARING

calculated in accordance with the Existing Loan Documents, commencing on February 1, 2010. The requirement that Blue Heron make monthly interest payments on the Wells Fargo Debt at the foregoing rate of interest is without prejudice to the Bank's right to claim the accrual of postpetition interest at the rate set forth in the Existing Loan Documents, or any other rate the Bank may claim to be applicable.

10.    The Debtor shall comply in all material respects with the covenants contained in the Existing Loan Documents relating to insurance, preservation and maintenance of the Bank's Collateral, the giving of notices and the maintenance of books and records.

11.    The Debtor shall provide to representatives of the Bank reasonable access to the Debtor's premises and its books and records, and shall make its employees, officers and consultants available to consult with representatives of the Bank as the Bank may reasonably request from time to time.

12.    Nothing contained herein shall constitute a waiver on the part of the Bank of any rights provided in section 507(b) of the Code.

13.    The Debtor shall at all times keep the property in which the Bank has a security interest or lien free and clear of all liens, encumbrances, and security interests other than those in existence on the Petition Date, and shall pay and discharge when due and in accordance with the Budget all taxes, levies, and other charges arising or accruing from and after the Petition Date.

14.    The Debtor shall maintain or cause to be maintained, insurance against loss, theft, destruction, and damage to property in which the Bank has an interest in accordance with the Existing Loan Documents.

15.    Any notice, direction or instruction to the Debtor, or the Bank required or contemplated by this Order shall be in writing and delivered by hand, by first class mail, by telegram or telex, or by facsimile or electronic mail to the parties at their respective addresses, as follows:

Page 6    -    INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
             (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
             THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

The Debtor:

Mr. Michael A. Siebers
Blue Heron Paper Company
419 Main Street
Oregon City, OR  97045
Tel:  (503) 650-4211
Fax:  (503) 650-4521
Email:  msiebers@blueheronpaper.com

(With a copy to the Debtor's undersigned counsel)

The Bank:

Wells Fargo National Association
Mr. Rodney S. Davis
Vice President, Relationship Manager
MAC P6101-144
1300 SW Fifth Avenue
Portland, OR  97201
Tel: (503) 886-2664
Fax: (503) 886-4312
Rodney.S.Davis@wellsfargo.com

(With a copy to the Bank's counsel)

Michael W. Fletcher, Esq.
Tonkon Torp LLP
888 SW Fifth Avenue
1600 Pioneer Tower
Portland OR  97204
Tel: (503) 802-2169
Fax: (503) 972-3869
michael.fletcher@tonkon.com

16.     This Order shall not prejudice the rights of the Bank to seek such additional relief as

it may deem appropriate including, without limitation, the right to:  (i) request additional adequate

protection of the Collateral or the Cash Collateral or relief from the automatic stay; (ii) request

conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; (iii) request the

appointment of a trustee or examiner; or (iv) request dismissal of the Debtor's Case for any reason.

Page 7   -   INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
            (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
            THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

17.     The authority of the Debtor to use Cash Collateral and other Collateral hereunder shall terminate without any further order of this Court upon the earliest of the following ("**_Termination Events_**"):  (i) the Debtor's failure to comply with the Budget, except as set forth in paragraph 2 hereof; (ii) the Debtor's failure to comply with any other term of this Order and the Debtor's failure to cure said act of non-compliance within 48 hours after notice by Bank to the Debtor; (iii) conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; (iv) appointment of a Chapter 11 trustee; (v) after 11:59 p.m., PST, January ___, 2010; or (vi) entry of a subsequent or final order regarding the use of Cash Collateral.

18.     The terms and provisions of this Order, including the priorities, liens, and security interests granted to the Bank hereunder shall be valid and enforceable against any trustee or fiduciary hereafter appointed in this Case or any subsequently converted bankruptcy case of the Debtor.  This Order shall also inure to the benefit of the Bank, the Debtor and their respective successors and assigns.  The provisions of this Order and the Adequate Protection Lien, and any claim arising under section 507(b) of the Code, and any and all rights, remedies, privileges, interests and benefits in favor of the Bank provided or acknowledged in this Order, and any actions taken hereunder, shall survive entry of any other order, including without limitation any order that may be entered confirming any plan of liquidation or reorganization, converting the Case to any other chapter under the Code, or dismissing the Case.

19.     Notwithstanding (i) the issuance of any order or an act (a) that operates as a stay, modification, amendment, supplement, vacating, revocation or reversal of this Order, or (b) that is contrary to this Order, (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of the Case, then in each such case, the acts taken by the Bank in accordance with this Order (and any claim incurred under section 507(b) of the

Page 8    -    INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
(II) GRANTING ADEQUATE PROTECTION IN CONNECTION
THEREWITH; AND (III) SCHEDULING A FINAL HEARING

Seattle-3584926.4 0010534-00013

Case 09-40921-rld7    Doc 16    Filed 12/31/09

Code incurred prior to actual receipt by the Bank of notice of any such stay, modification, amendment, supplement, revocation or reversal of this Order) shall be governed in all respects by the original provisions of this Order and shall remain valid and in full force and effect.

20.     Except as provided herein, this Order is in addition to and without prejudice to the rights of the Bank and any other party in interest to pursue any and all rights and remedies under the Code, or any other applicable agreement or law, including without limitation rights to contest the sufficiency of the Adequate Protection Lien, or to seek different or additional adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for the use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to the sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other persons or entities seeking compensation or reimbursement from the Debtor.

21.     In the event of a conflict between the terms and provisions of the Motion and this Order, the terms and provisions of this Order shall control.

22.     The Debtor anticipates that it will be necessary for the Court to consider a subsequent request (the "*Final Hearing*") for continued use of Cash Collateral for the period following January __, 2010.  Accordingly, the Final Hearing on the Debtor's anticipated continued use of Cash Collateral, and to address any necessary modification of the Budget and/or this Order, shall be conducted by the Court on January ___, 2010 at _____.m. at the United States Courthouse, 1001 Southwest Fifth Avenue, Suite 700, Courtroom #___, Portland, Oregon.

23.     Service of this Order (including the notice of the date, time and place of the Final Hearing and a copy of the proposed modification of the Budget and/or the Order) by the Debtor upon (i) counsel for any officially appointed creditors committee, (ii) all parties that have filed

Page 9    -    INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
             (II) GRANTING ADEQUATE PROTECTION IN CONNECTION
             THEREWITH; AND (III) SCHEDULING A FINAL HEARING

requests for notice under Bankruptcy Rule 2002, (iii) the 20 largest unsecured creditors of the Debtor, (iv) counsel to the Bank, (v) the ESOP trustee for the Debtor's equity security holders, and (vi) the United States Trustee, by hand or electronic delivery or facsimile, in each case on or before January __, 2010, shall constitute good and sufficient notice of the Final Hearing.

24.     Objections, if any, to the relief sought at the Final Hearing shall be in writing, shall be filed with the Clerk of the Bankruptcy Court, and the Office of the United States Trustee and shall be served upon the attorneys of record in this Case on or before 5:00 p.m. January ___, 2010.

DATED this _____ day of January, 2010.

_____
U. S. Bankruptcy Judge

Presented by:


By: _____
Brandy A. Sargent, OSB No. 045713
David B. Levant, *pro hac vice pending*
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480
basargent@stoel.com
dblevant@stoel.com

Proposed Attorneys for Debtor